OPINION OF THE COURT
Thomas W. Keegan, J.
This is a proceeding pursuant to CPLR article 78, challenging both the interpretation of Public Officers Law § 74, presented in New York State Ethics Commission Advisory Opinion No. 92-19 and the subsequent determination by the Office of the State Comptroller, requiring petitioner to resign from the Buffalo Water Board due to an appearance of a conflict of interest. Petitioner contends that the decisions of the New York State Ethics Commission (hereinafter SEC) and the Office of the State Comptroller (hereinafter OSC) were arbitrary, capricious and irrational since his appointment to the Buffalo Water Board did not create a conflict or appearance of a conflict of interest with his duties as a State employee.
Petitioner, Craig E. Speers, is currently employed by the State of New York as a Senior Examiner of Municipal Affairs, salary grade 18, in the Buffalo office of the State Comptroller. Petitioner’s position requires him to perform on-site field examinations of accounts and fiscal affairs (audits) of small units of local government (towns, villages) and to assist with audits of larger units of local government (cities, counties). The position is not classified as policy-making. Where feasible, the Comptroller’s office does not assign an examiner to audit the activities of the local governments where the examiner resides.
In early 1992, the petitioner was appointed by the Mayor to the Buffalo Water Board, and on May 28, 1992, the Buffalo Common Council confirmed petitioner’s appointment. (See, Public Authorities Law § 1048-f.) The Water Board consists of seven members and is responsible for operating the City of Buffalo’s water system. (See, Public Authorities Law § 1048-g.) As a public employee, Board members are generally uncompensated except for reimbursements of actual expenses.
The Legislature established the Buffalo Municipal Water Finance Authority (hereinafter Authority), which is responsible for financing the City of Buffalo’s water projects. (See, Public Authorities Law §§ 1048-c, 1048-d.) The Authority is administered by a seven-member board of directors and no member of the Water Board may serve as a director of the Authority.
*134 The Water Board may enter into agreements with the Authority and the City of Buffalo "to provide a means whereby the authority shall finance the cost of constructing water projects * * * [t]o acquire, purchase, lease as lessee, hold and use any property * * * subject to any limitations in any agreement entered with the city; [and] * * * [t]o acquire from the city title to the water system of such city”. (Public Authorities Law § 1048-g [6], [7], [9]; see also, Public Authorities Law §§ 1048-h, 1048-i.)
The question of conflict of interest in this case arises since the Authority and the City of Buffalo are subject to financial audits by OSC. While OSC will not audit the Water Board directly, an Examiner of Municipal Affairs, in the context of auditing the Authority or the City, may review agreements and projects approved by the Water Board. With this concern, OSC requested an advisory opinion from SEC regarding whether petitioner’s service on the Water Board violated Public Officers Law § 74. SEC Advisory Opinion No. 92-19 did not find a direct conflict of interest but found that petitioner’s service in both capacities could give the appearance of a conflict of interest prohibited under Public Officers Law § 74.
Based on this opinion, OSC advised petitioner to resign from the Buffalo Water Board due to the potential appearance of a conflict of interest. Petitioner was later instructed by OSC to provide written notice of his resignation from the Water Board by December 31, 1992, or face, disciplinary action seeking petitioner’s termination from State service. To avoid the appearance of a conflict of interest, petitioner offered to recuse himself if the need arose and to refrain from public comment concerning any matter related to an audit. OSC rejected this proposal as insufficient to remedy the potential appearance of a conflict of interest. Under protest, petitioner resigned from the Water Board effective December 31,1992.
Public Officers Law § 74, "called a code of ethics for State officers and employees, provides guidelines designed to eliminate substantial conflicts of interest between State duties and private interests.” (Rapp v Carey, 44 NY2d 157, 163.) Public Officers Law § 74 (2) prohibits any State agency employee from "hav[ing] any interest * * * or engaging] in any business or transaction or professional activity or incurring] any obligation of any nature, which is in substantial conflict with the proper discharge of his duties in the public interest.” (Emphasis added.) Public Officers Law § 74 (3) sets forward more specific standards of conduct which include both actual *135 and apparent conflicts of interest. The SEC found section 74 (3) (d), (f) and (h) particularly relevant.
"d. No officer or employee of a state agency, member of the legislature or legislative employee should use or attempt to use his official position to secure unwarranted privileges or exemptions for himself or others. * * *
"f. An officer or employee of a state agency * * * should not by his conduct give reasonable basis for the impression that any person can improperly influence him or unduly enjoy his favor in the performance of his official duties, or that he is affected by the kinship, rank, position or influence of any party or person. * * *
"h. An officer or employee of a state agency * * * should endeavor to pursue a course of conduct which will not raise suspicion among the public that he is likely to be engaged in acts that are in violation of his trust.”
The State Ethics Commission raised concerns about the possible conflict of interest which could be created if the petitioner or other members of OSC audited the City or the Authority. If OSC raised objections to terms of a contract made with the Water Board, "[t]he employee in question could be placing himself in a position of defending, as a member of the [Water] Board, certain practices that are contrary to precedents established [by OSC]. He would be involved with decisions that are reviewable by the State agency by which he is employed.” (SEC Advisory Opn No. 92-19, at 3.) Additionally the SEC was concerned with the effect of a disclosure "that the employee [Water] Board member is trying to convince the state agency by which he is employed to change its position on an issue.” (SEC Advisory Opn No. 92-19, at 4.) The SEC concluded that the total scenario raises concerns about petitioner’s "ability to discharge his [auditing] responsibilities for the State [and that service] in both capacities would give the appearance of a conflict of interest.” (SEC Advisory Opn No. 92-19, at 4.)
The SEC determination that petitioner’s dual service would create an appearance of a conflict of interest is speculative and remote; thus, this court finds that the decision by the State Ethics Commission was arbitrary, capricious and irrational.
The Legislature clearly realized that "some conflict of interest is inherent in any representative form of government” and chose only to proscribe substantial conflicts of interest under *136 Public Officers Law § 74 (2). (Legislative Declaration, L 1954, ch 696, § 1, eff Jan. 1, 1955, reprinted in McKinney’s Cons Laws of NY, Book 46, Public Officers Law § 74, at 231.) In determining the significance or the importance of a potential conflict, the likelihood that the conflict or apparent conflict will actually arise cannot be discounted in making a rational decision. First, OSC does not directly audit the Water Board; thus, any conflict would have to arise during an audit of the City of Buffalo or the Authority. To date, OSC has never conducted any audits of the Authority. Second, OSC’s current policy of not assigning an examiner to audit in his or her place of residence further limits the possibility of a conflict of interest. Therefore, any conflict that may arise during an audit of the City or the Authority would generally be limited to the situation where the assigned examiner objects to an agreement with the Water Board. All "acceptable” contracts would not create a conflict of interest and no evidence shows that contractual problems with the Water Board would be likely. Further, the respective powers and duties of the Water Board and the Authority "are in all respects for the benefit of the people of the city and the state for the improvement of their health, welfare and prosperity and that such purposes are public purposes and that the [water board and authority are] and will be performing an essential governmental function in the exercise of the powers conferred.” (Public Authorities Law § 1048-c [7]; § 1048-f [9].) Since the intended beneficiaries of both the Water Board and the Authority are "the people of the city and the state,” the likelihood of finding any objectionable contracts is even further reduced. Third, any conflict created by petitioner attempting to influence another OSC employee to shift to the Water Board’s position is purely speculative. The City or the Authority contracts with the Water Board, not with petitioner, individually. Petitioner is only one of seven members on the Water Board; petitioner’s position is not necessarily the same as the Water Board’s position. Given these considerations, the likelihood of a conflict of interest is extremely remote and there is no reasonable basis to conclude that petitioner’s dual service will create an appearance of a conflict of interest.
This is further reinforced by the SEC’s position on dual public service presented in Advisory Opinion No. 93-4. "The potential for the appearance of a conflict of interest is less when an individual is engaged in dual service for the State and for a not-for-profit organization or another public entity, *137 because neither the individual nor the not-for-profit or the public entity reap profit and the public’s interest may be advanced by the dual service.” (SEC Advisory Opn No. 93-4, at 4.) Given the extremely remote chance of an actual conflict of interest in this case of dual public service, it is difficult to conclude that the SEC advisory opinion was not arbitrary, capricious and irrational.
While SEC Advisory Opinion No. 92-19 did not address the issue of recusal, petitioner’s offer, to recuse himself if the need arose and to refrain from public comment concerning any matter related to an audit, should be sufficient to remove any appearance of a conflict of interest. Many SEC advisory opinions have allowed recusal where "[t]here is little likelihood of either entity becoming involved with issues of concern to the other.” (SEC Advisory Opn No. 92-8, at 3.) For example, in SEC Advisory Opinion No. 92-8, the SEC decided that the employee must insure that, "should any conflict of issues arise during the course of employment with the (employing State agency) or (State agency A) he must make full disclosure and immediately recuse himself from participation in such matters.” (SEC Advisory Opn No. 92-8, at 5.) Given the rather remote possibility of a conflict of interest, OSC’s unjustified refusal to consider recusal and insistence that petitioner resign from the Water Board may be considered irrational, arbitrary and capricious.